MARY HARTUNG, executrix under the last will and testament of Michael A. Doyle, deceased, complainant-appellant,

*v.*

CAMDEN SAFE DEPOSIT AND TRUST COMPANY, EDWARD WEST, RAYMOND L. WARREN, the W. CORPORATION, the W. M. CORPORATION and the STATE OF NEW JERSEY, defendants-respondents.

[Argued October 21st, 1940. Decided February 3d, 1941.]

*Mr. William C. Golshalk* and *Mr. David Novack,* for the complainant-appellant.

*Mr. Joseph Beck Tyler,* for the Camden Safe Deposit and Trust Company.

*Mr. Clifford A. Baldwin* and *Mr. Edward West, pro se,* for Edward West, Raymond L. Warren, W. Corporation and W. M. Corporation.

*Mr. David T. Wilentz,* attorney-general, and *Mr. William A. Moore,* for the State of New Jersey.

The opinion of the court was delivered by

CASE, J.

The appeal is from a decree, advised by the late Vice-Chancellor Davis dismissing, after hearing, the complainant's bill which was in the nature of a bill of review and which

sought to open the final decree rendered in a foreclosure proceeding more than five years earlier and to give a preferred position to complainant's junior $23,500 mortgage, a holding of the estate of 'Michael A. Doyle, deceased.

The W. M. Corporation was a close corporation. All of the stock originally belonged to Edward West, Raymond L. Warren and Samuel N. Miller. Warren withdrew, the corporation gave the Doyle mortgage to procure funds with which to purchase Warren's shares, and Doyle, as part of the transaction, had some of the shares assigned to him. The corporation owned two business properties—548 and 552 Federal street, Camden. The Camden Safe Deposit and Trust Company held an $85,000 first trust mortgage upon No. 548 and a $90,000 first trust mortgage upon No. 552. It also held a subsequent mortgage, covering both tracts, in the amount of $10,000 to secure two corporation notes aggregating $15,000, endorsed by West and Miller. Behind the three Trust Company mortgages was the Doyle mortgage, also covering both properties, subordinated by Doyle in his lifetime to the $10,000 mortgage. Later, the corporation asked for an extension of the first mortgages, and this led to a supplementary agreement between the corporation and the Trust Company dated July 23d, 1930, wherein the Trust Company extended the due date of those two mortgages for a period of three years, and the corporation, in consideration thereof, assigned to the Trust Company all the rents from the property so long as those mortgages should remain unpaid. The Trust Company was therein authorized to collect the rents and to pay therefrom taxes and municipal liens, the interest due or to grow due on the several mortgages in order of priority, fire insurance premiums, janitor's services, upkeep expenses, a five per centum collection fee to itself and to apply the balance toward the liquidation of the note obligation. The present suit is an attack upon the final decree in the proceeding brought by the Trust Company to foreclose its $10,000 mortgage.

Appellant argues upon involved incidents out of which she would draw the inference of fraud. Our study of the case brings us to the belief that unless complainant has substan-

tiated her contention that the Trust Company has committed such a fraud upon complainant as entitles her to the relief sought she may not prevail. Criticism of the Trust Company rests upon two alleged grounds, first, that that company played into the hands of West in starting the foreclosure and, second, that it did not apply the proceeds of the rents in the manner required by the collection agreement.

Perhaps West used the foreclosure to his own advantage as against his fellow stockholder Miller. Miller so believes. Miller inspired the present suit in retaliation for actions brought against him by the Trust Company in Philadelphia. It appears that those who had financial relations with Miller did not enjoy those relations and were pleased to be relieved of them; even the proctor for the complainant in the proceedings to wind up her decedent's estate became, according to his testimony, "blue in the face" in the endeavor to clear up some transactions that had occurred between Doyle and Miller. Further, the Vice-Chancellor who tried the case had reason to devaluate Miller's testimony because of a retraction which Miller, when faced with evidence contrary to his own, was obliged to make with respect to a material point. Nevertheless, this is not Miller's suit, and it is not a suit by W. M. Corporation, the foreclosed owner of the property and the maker of the contract with the Trust Company.

The Trust Company was strictly within its rights in instituting the foreclosure. The corporation notes became due on October 15th and 27th, 1931, respectively, and remained unpaid. On the lapse of ten days the Trust Company, as was its right, began the foreclosure. If the Trust Company had in fact applied in reduction of the note indebtedness all of the rental receipts which by any measure of logical argument could have been so applied, there would still have been a substantial amount due on the principal of the mortgage and the mortgage would have been subject to foreclosure. We think, moreover, that with prior disbursements made as authorized by the agreement there were no moneys available for use in reduction of the principal debt. The Trust Company may not be punished for doing that which it had a right to do and which it accomplished by lawful means, even

if that act, to its knowledge, benefited one as against the other of West and Miller and cut off, as an incidental result, the complainant's mortgage.

The second ground rests upon the assertion that at the time of the foreclosure complainant had no knowledge of the rental assignment agreement and that the Trust Company had permitted the trust moneys in its hands to accumulate, paying the same out on the day of the sale, without complainant's knowledge, in reduction of the outstanding debts subject to which the purchaser at the sheriff's sale would need to take. No part of those funds was misapplied; the moneys paid out on the day of sale were for interest on one of the first mortgages and for overdue city of Camden taxes; the balance then left in hand was $44.61. The only disbursement that presents a question is the payment on May 6th of the interest on the $90,000 mortgage which did not become due until a few days later. The agreement for the assignment of rentals, as a result of which the rent moneys came to the Trust Company, was primarily to protect the two first mortgages representing $175,000 of moneys held by the company in trust for others and which it desired to fortify both as to principal and interest. The foreclosure of the $10,000 mortgage did not affect those two mortgages; so far as the present question goes, the foreclosed mortgage might have been owned and foreclosed by an outside party. The Company held those moneys separate and apart from the fact of foreclosure. A portion was for rental periods extending beyond the sale date. Neither the funds on hand before, at, or, as we shall presently see, after the sale were put to a use not designated in the agreement. Retention of an appropriate amount until the due date of the interest on the superior encumbrances would not, we think, under all of the circumstances, have been unreasonable. The advance payment was neither an actual nor a constructive fraud upon the complainant. Complainant, notwithstanding her assertion of ignorance, knew that her interest moneys had been coming to her month by month from the Trust Company and must, if she thought at all, have known, as her attorney (through whom the Trust Company checks had been forwarded to her)

knew, that the Trust Company had been receiving the rental money and had been paying her interest therefrom; she made no inquiry as to what, if any, money the Trust Company held in that account. No deceit was practiced upon her.

It is further charged that the Trust Company irregularly and collusively disbursed the rental moneys received by it after the sheriff's sale. Certainly the complainant had no interest in the rental for periods beginning after the sale. The Trust Company, from then until June 16th, when the account was closed, collected approximately $2,400. These rentals were for periods that began to run after May 6th, except as to two items which appear as follows:

"May 10 Rent 548 Fedl. St. Camden 1st floor  
    4-1—5-1-32 ..... ..... ............. ... .... . $596.60  
June 13 Rent 5-1—6-32 548 Federal St., Camden,  
    N. J. ............................... .... $516.39"

The first item involves a clerical error. It is clear that the payment was from Louis K. Liggett Company for the month from May 1st to June 1st and that it did not become due until the day of payment. We do not know when the second item became due.

The question that arises thereon is whether six days' prorated portion of either of these items should have been placed to the credit of the interests in the real estate which were closed out on May 6th. The money received after May 6th was disbursed in payment of a small amount of commissions to the Trust Company on the money thus collected, janitor services, electric light, water service, overdue Camden city taxes in the amount of $1,153.80 (more than the whole of the two months' rental) for the first half of 1932 on No. 548 Federal street from which the above particularized receipts were had, and the balance to the new owner, W. Corporation. If the question is answered affirmatively, we are met with an opposing item in the taxes, overdue before the sale, that more than countervails. We conclude that the Trust Company was not obliged to enter a credit thereon.

Complainant was a party to the foreclosure. She filed no answer; she merely asked that her encumbrance be reported.

We are not satisfied that any false statement of outstanding encumbrances was made at the sale. Such testimony as was given by Miller thereon is not definite and is not convincing. Moreover, we are not told that the complainant or anyone representing her was at the sale to receive or to act upon the information there given. Therefore it does not appear that she was in position to be influenced by events at the sale. The credible evidence sustains the conclusion that complainant had neither the money nor the backing to enter upon so considerable a project as the purchase of the properties. That those properties had formerly had appreciably higher value is apparent from the fact that they were carrying $175,000 in first trust mortgages. But at the time of the sale there was a disordered real estate market. The State Inheritance Tax Bureau in the valuation of the Doyle estate appraised the two properties under date of June 7th, 1932, at $185,000, in other words as without equity beyond the first and second mortgages; and this with no allowance for accrued interest or unpaid taxes. We are not shown that had the allocation of the rental moneys been made otherwise than it was complainant could have financed the purchase. Raymond L. Warren, with Trust Company financing, bought the property at the foreclosure sale and took title in the W. Corporation, a new corporation formed by Warren and West. More than five years later, about September 1st, 1937, W. Corporation sold 552 Federal street for $134,000 to third parties. There is no fraud in the fact that the vicissitudes of the real estate market and the fortunes of those who took the hazard brought an ultimate profit.

We conclude that the complainant is not entitled to relief against the Trust Company. We find no privity of interest between the complainant and Warren whereon relief should be granted against the latter. There was no privity between complainant and West personally, but there was privity between complainant and W. M. Corporation in which West was an officer and a director. With respect to West, it is to be noted that West was obligated as endorser upon a note given to the Trust Company and secured by a bond and mortgage of the W. M. Corporation which, by Doyle's undertak-

ing, was prior to complainant's mortgage; and he was entitled to protect himself from loss thereon so long as he committed no fraud upon others. The Vice-Chancellor, having heard all of the proofs and observed the witnesses, found that the credible testimony was not sufficient to charge West with the liability which complainant sought to impose, and we are not inclined to reverse that finding. The conclusions thus reached lead to the further conclusion that complainant is not entitled to the desired remedy against either W. Corporation or W. M. Corporation. The state was made a party only against contingencies that have not arisen.

The decree below will be affirmed.

BODINE, J. (Dissenting.)

In this case, the officers and directors of the W. M. Corporation arranged with the Camden Safe Deposit and Trust Company to foreclose a second mortgage which it held covering corporate premises. A new corporation was then formed by them to take title at the foreclosure sale. Complainant, therefore, lost her third mortgage covering the premises in question. The new corporation it appears will take a considerable profit, and complainant sought to have a trust imposed upon its assets to prevent an unjust enrichment of those who resorted to such means to defeat her claims to their own advantage.

A court of equity is not circumscribed as are courts of law. Equity does what ought to be done. *Landell: A Brief Survey of Equity Jurisdiction.* The corporate charter is not a shield for fraudulent practice. The corporate officers cannot, at the expense of creditors and stockholders, enrich themselves. Equity draws the veil and orders that done which ought to be done. Corporate officers are fiduciaries and are bound by strict rules of moral conduct. They may not divert to themselves assets which should go to stockholders or creditors. *Marr* v. *Marr, 73 N. J. Eq. 642.* In that case, it was held that even though a trustee purchase trust property at public sale the purchase was voidable at the instance of the *cestui que trust.* Chancellor Pitney said for this court: "It is settled that a director has not complete freedom to contract

with his corporation. In *Stewart* v. *Lehigh Valley Railroad Co., 38 N. J. L. 505, 522,* Mr. Justice Dixon, speaking for this court, said: 'After an examination of all the cases cited, and such others as I have found, and a careful consideration of the principle and the results of regarding it and of disregarding it, I have come to the conviction that the true legal rule is that such a contract is not void, but voidable, to be avoided at the option of the *cestui que trust* exercised within a reasonable time. I can see no further safe modification or relaxation of the principle than this. A director of a corporation may have rights not arising out of express contract—such as the right to pass over its railroad, or to transport his goods over its canal, on paying reasonable tolls, or to have money which he had loaned it repaid to him; but where the right is one which must stand, if at all, upon an express contract, and which does not hold it against the will of his *cestui que trust;* for in the very bargain which gave rise to it, in which he should have kept in view the interest of that *cestui que trust,* there intervened before his eyes the opposing interest of himself.' See, also, *Gardner* v. *Butler, 30 N. J. Eq. 702, 721."

The Court of Chancery should have compelled the defendants West and Warren to do justice to the complainant and it was error to dismiss the bill of complaint as to them.

Mr. Justices Heher, Perskie and Porter concur in these views.

*For affirmance*—The Chief-Justice, Parker, Case, Dear, Wells, WolfsKeil, Rafferty, Hague, JJ. 8.

*For reversal*—Bodine, Heher, Perskie, Porter, JJ. 4.